STATE of Indiana, Honorable Otis R. Bowen, Governor of the State of Indiana, Indiana State Police, John T. Shettle, Superintendent, Indiana State Police, John Zentz, David Allen, Garth Whipple, John A. Kendall, Norman P. Reeves, James W. Heyde, Members, Indiana State Police Board, Defendants-Appellants,

v.

Jerry STATELER, Gerald L. Vanmeter, Joseph R. Rhodes, Oscar Gates, Reginold Brewer, James J. Theobald, C. L. Griffith, Gerald Hole, Gerald C. Hayes, Larry Beach, David Landis, James C. Belvins, Brooke D. Applyby, Plaintiffs-Appellees.

No. 1–1180A314.

Court of Appeals of Indiana, First District.

Aug. 4, 1981.

Rehearing Denied Sept. 10, 1981.

Linley E. Pearson, Atty. Gen., Charles N. Braun II, Deputy Atty. Gen., Indianapolis, for defendants-appellants.

Wallace, Campbell, Bunch & Shambach, Covington, Ringer & Dowd, Williamsport, for plaintiffs-appellees.

NEAL, Presiding Judge.

### STATEMENT OF THE CASE

This is an appeal from a judgment entered in the Vermillion Circuit Court after a trial by the court wherein the trial court ordered defendants-appellants John T. Shettle, Superintendent of the Indiana State Police, *et al.* (Shettle) to reimburse plaintiffs-appellees Jerry Stateler, *et al.* (Stateler) a sum of money each for certain past clothing expenses, retroactive to 1972, and to provide an annual clothing allowance in the future.

We reverse.

### STATEMENT OF THE FACTS

On December 1, 1978, Stateler and thirteen other plain clothes police investigators of the Criminal Investigation Division of the Indiana State Police Department (Department) filed a class action suit seeking reimbursement and payment for clothing expenses and an annual clothing allowance.

In the complaint, Stateler alleged that Shettle had failed to reimburse him for clothing expenses necessary for work pursuant to Ind. Code 10–1–1–7 and Ind. Code 10–1–1–8. In addition, Stateler sought an annual clothing allowance for the purchase of clothes necessary in the discharge of his duties as an investigating officer.

Following a bench trial on December 17, 1979, and the submission of post-trial briefs by both parties, the trial court, on February 19, 1980, entered findings of fact, 15 in number, and conclusions of law, five in number. Judgment was entered on May 21, 1980. In the findings, conclusions and

judgment, the court held that Ind. Code 10–1–1–7, Ind. Code 10–1–1–8 and the Fourteenth Amendment to the Constitution of the United States compelled Shettle to pay a clothing allowance henceforth and retroactive to 1972 to all plain clothes officers of the Indiana State Police. From this judgment Shettle appeals.

### ISSUES

The State has presented nine issues for review. Because of our resolution of Issue No. I, the principal issue, we deem it unnecessary to address the other issues. Issue I is stated as follows:

I. Whether the final judgment is contrary to law in that the trial court incorrectly held that Ind. Code 10–1–1–7, Ind. Code 10–1–1–8, Indiana Police Operating Standards Nos. PR–GEN–018 and PR–INV–014, the Fourteenth Amendment to the Constitution of the United States, and the Indiana Constitution all require that the defendants provide to the plaintiffs an annual clothing allowance.

### DISCUSSION AND DECISION

*Issue I.*

■ We first observe that Ind. Code 10–1–1–1 *et seq.* establishes the Superintendent and the Indiana State Police Board (Police Board) as the governing authorities of the Department, which authority extends to fixing job classifications and salaries. Ind. Code 10–1–1–3. Generally speaking, it is proper for a court to mandate an administrative agency to act in accordance with its statutory duty where its duty is clear, but a court cannot compel the exercise of a discretionary act in any particular manner. *State, Etc. v. Marion County Superior Court,* (1979) Ind., 396 N.E.2d 340. The Indiana Constitution, Article 3, Sec. 1, clearly divides the powers of government into three separate departments, and the judicial department cannot exercise any of the functions of an administrative department. *State, Etc. v. Marion County Superior Court, supra.*

We next examine whether an express statutory duty, or a discretionary duty is involved. Stateler's theory of action, which was adopted by the trial court, requires the interpretation of Ind. Code 10–1–1–7, Ind. Code 10–1–1–8, Regulation PR–INV–014, and Regulation PR–GEN–018. There is no evidentiary conflict. The statutes are as follows:

Ind. Code 10–1–1–7 provides:

"The police board shall provide for the employees of the department within the amount of appropriations therefor, the uniforms and equipment necessary to the performance of their respective duties, but all such uniforms and equipment shall remain the property of the state. The board shall have the authority to sell such uniforms and equipment with the consent of the governor as they shall become unfit for use, and all moneys received therefor shall be paid into the state treasury and credited to the general fund of the state. The board shall charge against any employee of the department the value of any property of the department lost or destroyed through carelessness or neglect of such employee, and if it shall be determined by the board that such loss or destruction was due to carelessness or neglect, then the value of such equipment shall be deducted from the pay of such employee."

Ind. Code 10–1–1–8 provides:

*"The superintendent shall have the authority to approve* vouchers in payment of expenses incurred by employees of the department in the discharge of their duties, and such vouchers shall be audited and paid out of the appropriations for the department in the manner provided by law. Allowances for lodging and subsistence while away from official station may be paid to the employees of the department under such terms and conditions as the superintendent may prescribe. The superintendent may provide lodging and subsistence for employees for the department at their official stations." (Emphasis added.)

Regulation PR–GEN–018 establishes guidelines for the issuing and wearing of the official uniform of the department, and provides that uniformed employees shall wear the official uniform of the department as prescribed by the superintendent. The regulation then directs the manner in which, and, on what occasions the official uniform should be worn. It states that it shall not be worn by investigators in the normal course of their work. However, investigators may be ordered into their uniforms on specific occasions. The regulation then describes the official uniform. Briefly, the official uniform includes a dark blue broad-brimmed campaign hat, a dark blue shirt, a white "T" shirt, a light powder blue tie, plain black belt, blue-gray trousers, black plain-toed shoes, black socks, and a dark blue blouse.

Regulation PR–INV–014 "establishes guidelines for investigators and other plain clothes police personnel." Section (111)(c) of this department regulation states:

"(c) These guidelines do not establish any firm 'dress code' and reasonable individual discretion is granted in the selection of styles and types of clothing to be worn.

1. Appropriate dress for the situation or occasion is considered reasonable discretion and should reflect a professional appearance regardless of the style.
2. Personnel may be excluded from any of the above dress standards if the nature of their assignment necessitates otherwise."

The evidence discloses that the Department did not pay a clothing allowance for investigating or other plainclothes employees though they were furnished uniforms. Stateler's argument can be summed up as follows: PR–INV–014 prescribes acceptable attire for plain-clothes police officers. PR–GEN–018 prohibits plain-clothes officers from performing their normal duties in the official uniform. Therefore, plain clothes are the uniform of a plain-clothes officer and an expense in the discharge of his duty. Thus, under Ind. Code 10–1–1–7 and Ind. Code 10–1–1–8, the expense of such clothing must be paid by the Superintendent.

As Shettle correctly states in his brief, in construing a statute, we must give effect to the intention of the General Assembly. *Adams v. State*, (1980) Ind.App., 411 N.E.2d 160. In so doing, a statute is to be examined and construed as a whole, giving words their plain, ordinary and usual meaning. *Suburban Homes Corp. v. Harders*, (1980) Ind.App., 404 N.E.2d 629. If a statute is certain and unambiguous, there is no need to resort to rules of judicial construction, nor may the court substitute language which it feels the legislature may have intended. *Gilbert v. State*, (1980) Ind.App., 411 N.E.2d 155. Judicial construction of a statute is permissible only where a statute is ambiguous and of doubtful meaning. *Sue Yee Lee v. Lafayette Home Hospital, Inc.*, (1980) Ind.App., 410 N.E.2d 1319.

■ From our reading of Ind. Code 10–1–1–7, we conclude that it was the clear intent of the General Assembly that the Police Board shall provide only *official uniforms* and equipment to Department employees; the statute does not require a clothing allowance for plain-clothes officers. No judicial construction of the statute is necessary.

■ The evidence discloses that both criminal investigators and Department-uniformed employees are issued the official uniform of the Department. The term "uniform" is not defined under the Act, but the ordinary meaning of the word "uniform" is used here. It has no technical meaning, and is specifically described in Regulation PR–GEN–018. Regulation PR–INV–014 merely provides general guidelines for plain clothes, leaving to the discretion of the officer to choose what clothing to wear. Those guidelines do not amount to a mandatory dress code. At the officer's option, he may wear his work clothing for personal occasions since it is his property. Merely because one employee's job description requires of him to wear the official uniform of the Department does not have the effect of creating a clothing allowance for another employee who wears plain clothes. Had the General Assembly, Police

Board or Superintendent seen fit to create an annual clothing allowance in addition to providing police officers with Department uniforms, they could have done so. However, they did not. Under Ind. Code 10–1–1–7, the word "uniform" can only refer to the distinctive garb of the official Department uniform, and not to plain clothing Department investigators wear in the discharge of their duties. Ind. Code 10–1–1–7 clearly does not establish an annual clothing allowance. In fact, all uniforms issued to employees of the Department "remain property of the State" under that statute.

We are, therefore, of the opinion that the statutes and regulations do not impose on the defendants a duty to furnish a clothing allowance for Stateler. The court's determination that they did is in error.

The trial court, in its conclusion of law No. 2, stated:

"Because the defendants provide clothing to all individuals employed by the Indiana State Police, other than the plaintiffs, the plaintiffs are denied due process under the equal protection provisions of the 14th Amendment to the Constitution of the United States of America, and they further are denied their rights as guaranteed by the Constitution of the State of Indiana by taking property from the plaintiffs without due process of law and/or just compensation."

Neither of the parties in their briefs addresses the taking of property without due process of law issue as set forth under the trial court's conclusion of law No. 2. The statute clearly states that the uniforms are to remain the property of the State. Neither employee gains a property interest in the uniform; therefore, there is no "taking" of property as the trial court erroneously concluded. In support of his equal protection challenge, he argues that "For the superintendent and the Indiana State Police Board to provide uniforms and equipment for some employees receiving the same pay as investigators and to deny the reimbursement for those expenses incurred by plain-clothes police officers is a denial of equal protection as contemplated by the Fourteenth Amendment to the Constitution of the United States, Article I, Sec. 23, of the Constitution of Indiana." We have said that the statute does not provide for a clothing allowance. Stateler's equal protection argument is an attack upon the statute itself.

The gist of equal protection guaranteed by the Constitution of the United States and the State of Indiana is the subjection to equal laws applying to all alike in the same situation. So long as all are treated alike under like circumstances neither of these provisions are violated. *Metropolitan Casualty Ins. Co. v. Brownell*, (7th Cir. 1934) 68 F.2d 481, *affirmed* 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070.

■ However, it is well established that the equal protection clause does not prevent reasonable classification. In order to be reasonable the classification must not be arbitrary or capricious, and it must bear a reasonable relation to the object of the legislation. *Forks v. City of Warsaw*, (1971) 257 Ind. 237, 273 N.E.2d 856, *cert. den.* 409 U.S. 841, 93 S.Ct. 39, 34 L.Ed.2d 80. The burden of establishing the unconstitutionality of a statute rests on him who assails it. *Metropolitan Casualty Ins. Co. v. Brownell*, (1935) 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070. The standard of review, where the constitutionality of a statute is challenged, was discussed in *Sidle v. Majors*, (1976) 264 Ind. 206 at 208–9, 341 N.E.2d 763.

"In approaching a consideration of the constitutionality of a statute, we must at all times exercise self restraint. Otherwise, under the guise of limiting the Legislature to its constitutional bounds, we are likely to exceed our own. That we have the last word only renders such restraint the more compelling. We, therefore, remind ourselves that in our role as guardian of the constitution, we are nevertheless a court and not a 'supreme legislature.' We have no right to substitute our convictions as to the desirability or wisdom of legislation for those of our elected representatives. We are under a constitutional mandate to limit the General Assembly to its lawful territory of

prohibiting legislation which, although enacted under the claim of valid exercise of the police power, is unreasonable and oppressive. Nevertheless, we recognize that the Legislature is vested with a wide latitude of discretion in determining public policy. Therefore, every statute stands before us clothed with the presumption of constitutionality, and such presumption continues until clearly overcome by a showing to the contrary.

In the deliberate process, the burden is upon the challenger to overcome such presumption, and all doubts are resolved against his charge."

We view the entire argument of Stateler as an argument concerning pay or benefits. Not all employment disappointments raise a constitutional question. There is no constitutional or legal requirement under the equal protection clause that all police officers receive the same compensation where differing duties dictate a pay differential. *Los Angeles Fire & Police Protective League v. City of Los Angeles*, (1972) 23 Cal.App.3d 67, 99 Cal.Rptr. 908. *See also Phelps v. Board of Education*, (1937) 300 U.S. 319, 57 S.Ct. 483, 81 L.Ed. 674; *Kuespert v. State*, (1978) Ind.App., 378 N.E.2d 888.

■ Measured against the above authorities, Stateler's equal protection argument must fail. Plain clothes employees are not in the same work category as uniformed employees. The job classification of plain clothes-officers is different from uniformed officers, their duties are different, and pay scale different. The creation of job classifications, assignment of duties, and provision for pay and other benefits for each classification is the function of the governing authorities of the Indiana State Police acting under authority of the statute. It is not the function of the judiciary to substitute its convictions as to the desirability or wisdom of the legislative or administrative acts. We merely determine whether the acts and classifications were reasonable. Here, we hold that the acts were reasonable.

For the above reasons, this cause is reversed and the trial court is ordered to enter judgment for Shettle.

Reversed.

ROBERTSON and RATLIFF, JJ., concur.