**STATE of Indiana on the Relation of Frank L. LAND, et al., Relator-Appellant,**

v.

**BOARD OF TRUSTEES OF SPRINGS VALLEY SCHOOL CORPORATION, et al., Respondent-Appellee.**

**No. 1–481A130.**

Court of Appeals of Indiana, First District.

Jan. 19, 1982.
Rehearing Denied Feb. 24, 1982.

Howard B. Lytton, Jr., Steven E. Ripstra, Lytton & Ripstra, Jasper, for relator-appellant.

James C. Tucker, Tucker & Tucker, Paoli, for respondent-appellee.

NEAL, Judge.

## STATEMENT OF THE CASE

This is an appeal by Frank L. Land and others (Relators) from an adverse judgment in their mandamus action, wherein they sought to compel the Board of Trustees of the Springs Valley School Corporation (Board) to act upon a petition to change the method by which members of the governing body of that school corporation are selected.

We reverse.

## STATEMENT OF THE FACTS

Relators filed their "Petition to Change Method of Selection of Board of Trustees of the Springs Valley School Corporation" in counterparts (Petition) with the Orange County Clerk (Clerk) on January 25, 1980. The Clerk certified to the Board, by letter dated February 1, 1980, that 659 registered voters of the school district signed the Petition and that a total of 3,153 registered voters resided within the boundaries of the school corporation. On April 7, 1980, the Board adopted a resolution expressing its opinion that the Petition was invalid. The Board undertook no other action on or regarding the Petition.

Relators filed the instant mandamus action on May 13, 1980, alleging essentially that the Petition contains the signatures of more than 20 percent of the registered voters residing within the boundaries of the school corporation and, as such, the Board is required by statute to undertake certain actions thereon, more particularly described in our discussion, *infra*.

Following a hearing, the trial court determined the Petition is invalid and denied the mandate. The trial court found that of the 659 signatures on the petition, 11 are dupli-

cates, three are not accompanied by the date of signing, and 24 contain insufficient indicia of the residence of the signatory. Reducing the total number of signatures (659) by the number of signatures found to be invalid (38) a balance of 621 signatures remains. Since 3,153 registered voters reside within the boundaries of the school corporation, 20 percent thereof would equal 631, a figure in excess of the 621 signatures found to be valid.

## ISSUE

Because we reverse, we need only to consider the following issue:

Whether the trial court erred in determining that 24 signatures are invalid because of an insufficient indicia of the signatory's residence.

## DISCUSSION AND DECISION

The procedures by which the governing body of a school corporation may be reorganized are prescribed in Ind.Code 20–4–10.1–1, *et seq.* This chapter includes a provision for effecting a change in the manner by which members of the governing body are selected. Ind.Code 20–4–10.1–5(a)(1)[1] states:

"Initiation of Plan Change. Change in a plan may be initiated by either of the following procedures:

(a) By filing a petition signed by twenty per cent (20%) or more of the voters of the school corporation with the clerk of the circuit court[.]"

Ind.Code 20–4–10.1–6 prescribes the manner in which the petition is to be completed and the action to be taken by the Clerk upon its submission thereto, stating in pertinent part the following:

"Certifying Petitions. Where the voters are entitled to file any petition under this chapter with the clerk of the circuit court to initiate a plan, to protest a plan or for an alternative plan, the filing and certification of such petition shall be governed by the following provisions:

(a) *Such petition shall show thereon the date on which each person has signed the petition and his residence on such date.* The petition may be executed in several counterparts, the total of which shall constitute the petition. . . .

\*     \*     \*     \*     \*     \*

(c) After the receipt of any counterpart of the petition, each clerk shall make a certification under his hand and seal of his office as to (i) the number of persons signing the counterpart, (ii) the number of such persons who are registered voters residing within that part of such school corporation located within his county, as disclosed by the voter registration records in the office of the clerk or the board of registration of the county, or wherever such registration records may be kept, (iii) the total number of registered voters residing within the boundaries of that part of such school corporation located within his county, as disclosed in the records mentioned in subdivision (ii) hereof, and (iv) the date of the filing of such petition with him.

(d) Such certification shall be made by each such clerk within thirty (30) days after the filing of the petition, excluding from the calculation of such period any time during which the registration records are unavailable to such clerk, or within any additional time as is reasonably necessary to permit such clerk to make such certification. Such clerk shall establish a record of his certification in his office and shall file the original petition and a copy of his certification with the governing body. (Our emphasis.)

Within 30 days of the filing of a petition, the governing body must by resolution either approve or disapprove the plan. Ind. Code 20–4–10.1–7. Testimony of the superintendent of the Board discloses that the Board adopted a resolution on April 7, 1980,

---

1. This is the current codification of the subsection. Prior to July 1, 1981, the effective date of the amendments contained in Acts 1981, Pub.Law 193, Sec. 2, the subsection was codified at Ind.Code 20–4–10.1–5(1). Those amendments did not affect the substance of the subsection with which we are here concerned.

well beyond the 30-day period, finding the petition invalid.[2] The next step in the procedure is prescribed by Ind.Code 20–4–10.1–8, which states in part:

"Within ten (10) days after the governing body has initiated a plan or has approved or disapproved the first plan initiated by petition filed with it, it shall publish a notice one (1) time in a newspaper of general circulation in the county of the school corporation.... Such notice shall set out the text of any plan initiated by the governing body or any other plan filed with it prior to the preparation of the notice. It shall also state the right of the voters, as further provided in this section, to file petitions for alternative plans or a petition protesting the adoption of any plan or plans to which the notice relates."

The Board did not undertake to publish such notice and did not perform any of the subsequent tasks prescribed by the statute. The mandate in the instant cause is sought to compel the Board's compliance with the statutory directives.

The mandamus action is authorized by Ind.Code 34–1–58–2, which states:

"The action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer or person to compel the performance of any act which the law specifically enjoins, or any duty resulting from any office, trust or station."

This has been interpreted as requiring a failure on the part of the respondent to perform a "clear, absolute and imperative duty imposed by law" before a writ of mandate may issue. *State ex rel. Civil City of South Bend v. Court of Appeals of Indiana—Third District,* (1980) Ind., 406 N.E.2d 244, 246. Public officials, boards, and commissions may be mandated to perform ministerial acts when under a clear legal duty to perform such acts. *Knutson v. State ex rel. Seberger,* (1959) 239 Ind. 656, 157 N.E.2d 469.

Ind.Code 20–4–10.1–7 states:

"The governing body [Board] shall, by resolution adopted within thirty (30) days after a petition is filed with it, either approve or disapprove the plan. The failure to take any action within such period shall constitute a disapproval of such plan."

Ind.Code 20–4–10.1–8, *supra,* states that the Board "shall" publish notice of the plan within ten days of the plan's disapproval. The term "shall" in a statute is ordinarily to be used in its mandatory sense. *City of Indianapolis v. Ingram,* (1978) Ind.App., 377 N.E.2d 877, 884. Thus, if the Petition is signed by at least 20 percent of the registered voters of the school corporation, is so certified by the Clerk, and is completed in a manner complying with the statute, the Board is under a clear legal duty to perform the ministerial tasks prescribed by the statute.

The essence of the Board's position is that the Petition does not contain the requisite number of valid signatures and that such fact is apparent on the face of the Petition. Therefore, the Board concludes, it is under no duty to take any action upon the Petition. We agree that to the extent a signature is invalid on its face for want of statutory compliance, the Board is not required to count that signature; and, should the number of such facially invalid signatures cause the total number of signatures on the petition to fall below the requisite 20 percent figure, the Board is under no duty to act upon it. Thus, the Board properly discounted the 11 duplicate signatures, for obvious reasons, and the three signatures not accompanied by the date of signing, as the inclusion of the date is clearly required by the statute.

We are presented with different considerations, however, regarding the 24 signatures that were excluded on the basis that they are accompanied by an insufficient indicia of the respective signatory's

---

**2.** In its brief, the Board sets out verbatim the purported language of the resolution referred to in the superintendent's testimony, but the resolution itself is not found in the record of proceedings.

residence. Representative of the contested signatures are the following:

| Signature | Mailing Address | Voting Precinct | Date |
|---|---|---|---|
| /s/ Thelma F. McCune | French Lick | East | 10–2–70 |
| /s/ Marie H. McNeely | Jackson | | 10–31 79 |
| /s/ Floyd G. Street | West Baden | East | 11–8–79 |

The Board maintains that each of the 24 signatures is invalid because it does not list the signatory's street address or mailing address. Testimony at the trial was heard indicating that there are no street addresses in West Baden Springs or the rural French Lick area, and that "French Lick," with no accompanying street address, is a sufficient mailing address for postal purposes. The Board cites no authority in support of its contention that a specific street or mailing address is required under the statute, and develops no cogent argument therefor. The statute does not expressly require an address. The Board simply characterizes the descriptions provided as "cryptic notations of purported residence."

We recognize that the term "residence" has no precise legal meaning and must be construed within the particular statutory context in which it is used. See, 77 C.J.S. Residence (1952). "Residence" is not defined in Ind.Code 20–4–10.1–1, the definitional section of the chapter here under consideration.

The purpose of the statutory provision, Ind.Code 20–4–10.1–5, requiring that the petition be supported by 20 percent or more of the voters of the school corporation is:

> "... to insure sufficient interest in the plan to make it worthwhile to complete the statutory proceedings while preserving the right of the people to seek change in the organization of their school corporations."

Knox Community School Corporation v. McCurdy, (1977) Ind.App., 367 N.E.2d 1108, 1109. The requirements that each signature include the signatory's residence and the date of signing is included to enable the Clerk to accurately determine whether the signatory is a registered voter of the school corporation at the appropriate time. The Clerk was able to make this determination in the instant case regarding the signatories whose residence denominations are alleged-

ly insufficient, and the statutory purpose was achieved. We note again that no question concerning the qualifications of the persons signing the Petition, that is, whether they are indeed registered voters residing within the boundaries of the school corporation, has been raised in the course of this proceeding. We therefore hold that the trial court erred as a matter of law in finding the 24 signatures invalid for the reason that the residences of the signatories were insufficient and that, consequently, the number of valid signatures on the Petition fell short of the required 20 percent figure. As long as the residence denominated on the petition under this chapter is sufficient for the Clerk to determine the qualification of the signatory, the failure to list a street address or mailing address does not render an otherwise valid signature invalid on its face. The number of valid signatures on the Petition herein (645) being in excess of 20 percent of the registered voters of the school corporation (631), the Board is under a clear legal duty to perform the ministerial acts prescribed by the statute, and Relators' petition for mandate was erroneously denied.

Our research has disclosed that there is no uniformity among the various statutes under which petitions are authorized to initiate various proceedings as to the form and substance of petitions. Generally, the information required to accompany a signature on a petition is designed to import that amount of information necessary to identify the signatory as a person with a sufficient assertible interest to support the petition. For example, Ind.Code 8–20–8–3 (Supp. 1981), a statute concerning the procedures for temporarily closing county roads, requires specifically that each petitioner include his "address" upon the petition. Ind. Code 7.1–3–19–15 authorizes a verified written remonstrance against the granting of certain liquor licenses signed by at least 51 percent of the registered voters of the appropriate "residential district." In the instant case, no purpose whatever would necessarily be served by requiring a more precise indication of the signatories' residence. It does not matter where within the boundaries of the school corporation the

signatory maintains his household, so long as he is a registered voter of the school corporation, and that the clerk is able to so determine. Indeed, a person's mailing address, particularly if a rural route, is in many instances not indicative whatsoever of the school corporation within which area the person resides.

We make one additional comment. The Board states in its brief, "There is no way that a clerk (or individuals in the clerk's office) unable to glean the existence of duplicitous [duplicate] signatures may verify the signatures of individuals with cryptic notations of purported residence." This attack on the competency of the clerk and his staff is wholly unwarranted. We direct the Board to the language of Ind.Code 20–4–10.1–6(c)(i), *supra*, which requires the clerk to certify the number of persons signing the individual *counterparts*. We have carefully examined the counterparts comprising Relators' Petition and note that in no individual counterpart are duplicate signatures contained.

This cause is therefore reversed and the trial court is instructed to enter judgment in favor of Relators.

Reversed.

RATLIFF, P. J., and ROBERTSON, J., concur.