**INDIANA DEPARTMENT OF MENTAL HEALTH, Defendant-Appellant,**

**v.**

**STATE of Indiana on Relation of SOUTHLAKE CENTER FOR MENTAL HEALTH, INC., Plaintiff-Appellee.**

**No. 3–983A307.**

Court of Appeals of Indiana,
Third District.

Sept. 5, 1984.

---

Linley E. Pearson, Atty. Gen., Marsha Harrison, Deputy Atty. Gen., Indianapolis, for defendant-appellant.

Thomas M. Greenberg, Walker, Fleming, Corbin & Greenberg, Professional Corporation, Merrillville, for plaintiff-appellee.

GARRARD, Judge.

Relator Southlake Center for Mental Health, Inc. (Southlake) filed its complaint against the Indiana Department of Mental Health (Department) on December 10, 1981. Southlake sought, *inter alia,* a mandate order directing the Department to promulgate rules pursuant to IC 16–16–1–5 and IC 16–16–1–10. On September 28, 1982 the trial court granted in part Southlake's motion for summary judgment and on October 28, 1982 issued its mandate order directing the Department to promulgate rules pursuant to IC 16–16–1–9 in sufficient time to allow their publication in the January 1, 1983 issue of the Indiana Register.

On June 28, 1983 the trial court granted Southlake's motion to correct errors, vacated its previous order and entered a new mandate order. The Department was ordered, *inter alia*, to promulgate rules pursuant to IC 16–16–1–9 with the direction that the rules address at least the following matters: 1) time and place for submission of budgets, 2) material information to be included, 3) forms, if any, to be required and format to be followed. In addition, the trial court ordered the Department to obtain court approval of its proposed rules prior to their promulgation. Finally, the trial court ordered the Department not to consider the amount of state funds available to pay mental health centers' operating deficits in any fiscal year until the Department had approved the mental health center budgets submitted pursuant to IC 16–16–1–9.

▪ The Department subsequently perfected this appeal. Restated, the issues [1] on appeal are:

1. Did the trial court exceed its mandate authority by requiring the Department to include specific factors in its rules?

2. Did the trial court exceed its mandate authority by requiring court approval of proposed rules prior to their promulgation?

3. Did the trial court err in finding that the Department has a nondiscretionary duty under IC 16–16–1–9 to determine the amount of operating deficit to allow to each mental health center without prior consideration of whether the aggregate amount of operating deficits allotted to all community health centers will exceed the total amount of state funds budgeted that year for mental health centers,

such that its orders to do so exceeds its mandate authority?

*Issue 1*

The trial court's mandate order of June 28, 1983 directed the Department to promulgate rules pursuant to IC 16–16–1–9 and required that:

"Said rules and regulations shall address at least the following matters: (a) time and place for submission; (b) material information to be included; and (c) form or forms, if any, required to be used, or format required to be followed."

▪ The trial court's mandate authority is derived from IC 34–1–58–2, which states:

"The action for mandate may be prosecuted against any inferior tribunal, corporation, public or corporate officer or person to compel the performance of any act which the law specifically enjoins, or any duty resulting from any office, trust or station."

Mandate is an extraordinary remedy and is, accordingly, viewed with extreme disfavor. *State ex rel. Civil City of South Bend v. Court of Appeals of Indiana* (1980), 273 Ind. 551, 406 N.E.2d 244. A court may properly mandate an administrative agency to perform a clear and imperative statutory duty. *State ex rel. Land v. Bd. of Trustees of Spring Valley School Corp.* (1982), Ind.App., 430 N.E.2d 791. However, a court may not properly order an agency to accomplish a discretionary act in a particular manner. *State v. Stateler* (1981), Ind. App., 424 N.E.2d 150.

▪ As both parties admit, the Department has a clear statutory duty to promulgate rules regarding procedure for budget submission under IC 16–16–1–9.[2] How-

---

**1.** The Department first attempts to challenge the trial court's jurisdiction in its reply brief. The trial court had subject matter jurisdiction to issue its mandate order under IC 34–1–58–1. The Department's failure to challenge the trial court's jurisdiction of the particular case at the earliest opportunity constitutes a waiver of this issue. *See State ex rel. Dean v. Tipton Circuit*

*Court* (1962), 242 Ind. 642, 181 N.E.2d 230, 235–56.

**2.** "Budget, rules and regulations

Sec. .9. The Department of Mental Health shall adopt rules and regulations under which each mental health center shall submit to the department the center's program and total operating budget which shall include anticipated in-

ever, the statute is silent regarding the procedure and format for submitting proposed budgets.

Southlake argues that the mandate order does not require a *specific* time, place, or material information and format to use but only requires that these fundamental matters are addressed in some fashion in the rules. They assert that the trial court's order is in the nature of a remand with instructions. We disagree.

The Department has a clear statutory duty to promulgate rules, the content of which is discretionary. In *Indiana Alcoholic Beverage Comm. v. McShane* (1976), 170 Ind.App. 586, 354 N.E.2d 259, 268, the court noted that the trial court had erred by issuing an injunction because it encroached upon an agency's legitimate rulemaking process prior to completion.

"Indiana, like other jurisdictions, recognizes the need for unfettered action by administrative agencies operating within the sphere of their authority. A court may not attempt to control an agency's valid exercise of its discretionary powers or to substitute its judgment for that of the agency in matters within the realm of the agency's delegated authority. In *Uhlir v. Ritz* (1970), 255 Ind. 342, 264 N.E.2d 312, Justice Hunter describes the limited review power exercised by the courts:

'To assure that the administrative process does not exceed the bounds of justice the courts have been required to exercise a certain review power. But, because we must be ever aware that *we operate within a tri-partite system of government, courts must carefully police the scope of their review* so that they do not intrude into the area of valid administrative discre-

tion.... We may make such a ruling [that an administrative act was capricious, arbitrary, an abuse of discretion, in excess of statutory authority or unsupported by substantial evidence] if the facts of a case warrant it *but we may not interfere with acts by an administrative body which are within the allowable scope of responsible discretion.'*"

255 Ind. at 344, 345, 264 N.E.2d at 313 (footnote omitted, citations omitted, emphasis in original). The Department had not completed the rulemaking process when the trial court vacated its initial mandate order and required inclusion of particular matters in the rules under its second mandate order. It is not within the province of the trial court to order the Department, before or after rule making is complete, to include particular factors which are within the Department's discretion to determine. Consequently, we reverse the trial court's order requiring particular factors to be treated in the Department's rule making.

*Issue 2*

■ The trial court's mandate order required the Department to submit to the court its proposed rules for approval before they became effective. The Department asserts that the court's order requiring prior approval of rules exceeded its mandate authority because court approval of rules is not a statutory duty of the Department under the rule making process of the Administrative Adjudication Act and is not among the Department's statutory duties found in IC 16–16–1–9.

Southlake maintains that the court's retention of jurisdiction to review proposed rules is legitimate under its mandate au-

come from all gifts except bequests and merchandise, fees, and the county payment as provided for in sections 6 and 7 of this chapter and federal grants for direct service, except research and demonstration grants. The Department of Mental Health, after the auditor of each participating county has certified that the county has met the provisions in Sections 6, 7 and 8 of this chapter shall examine and approve the submitted budget for each center after review of

the participating county councils. Gifts, fees, the county payment for operation as determined by Section 6 of this chapter and federal grants for direct service, shall then be subtracted from the total approved operating budget of the center and the Department of Mental Health shall allot to the center the amount of the operating deficit. (Formerly: Acts 1971), P.L. 226, SEC. 4)."

thority as the method most likely to result in compliance.

The trial court's mandate order, paragraph nine (9) reads as follows:

"9. Before any proposed rules, regulations, standards, classifications, procedures, or requirements ("rules") of the Department interpreting, implementing, supplementing, or relating to IC 16–16–1–9 or 16–16–1–10 shall become effective, the Department shall obtain approval thereof by this Court as herein provided. Before any such rules are published in proposed form in the Indiana Register, including any required republication due to changes, and within thirty days of the date of this order of mandate with respect to any proposed rules previously so published but not effective on the date of this order of mandate, the Department shall file a copy thereof with the Clerk of this Court, serve a copy on Southlake's attorneys, petition the Court for approval thereof, and obtain such approval after due notice and hearing. Pursuant to said petition, the Court shall consider whether the proposed rules comply with the provisions of this order of mandate and are not contrary to law."

The Administrative Adjudication Act [3] (Act) governs the rule making procedure [4] for state-wide agencies such as the Department. A rule is promulgated under the statute as follows:

"4–22–2–1 Hearings on adoption of rules; notice

Sec. 4. Before any rule is adopted by any agency it shall cause a notice to be published in a newspaper of general circulation printed and published in Marion County, Indiana, and, after July 1, 1978, in the Indiana Register, at least twenty-one (21) days prior to the date set for a hearing.

Said notice shall include a statement of the time and place of said hearing, a reference to the subject-matter of the proposed rule or rules and refer to the fact that a copy of said proposed rule or rules is on file at the office of said agency where it may be examined: Provided, however, that no rule shall be invalid because the reference to the subject-matter thereof in said notice may be inadequate or insufficient. At least five (5) copies of said proposed rule or rules shall be on file at the office of said agency from the date of the publication of said notice continuously until the said hearing and any interested person shall be given an adequate opportunity to examine a copy of said proposed rule or rules. Two (2) copies shall be delivered at the same time to the legislative council.

On the date set for hearing any interested party in person or by attorney shall be afforded an adequate opportunity to participate in the formulation of the proposed rule or rules through the presentation of facts or argument or the submission of written data or views. All relevant matter presented shall be given full consideration by the agency.

Any agency may adopt procedures in addition to those required by this chapter including the holding of conferences and inviting and permitting the submission of suggestions, facts, argument and views of interested persons in advance of the drafting of the proposed rule or rules. (Formerly: Acts 1945, c. 120, s. 4). As amended by Acts 1977, P.L. 38, SEC. 3.

4–22–2–5 Submission of proposed rules to attorney general and governor for approval; limitations

Sec. 5. It shall be the duty of every agency which may have been or hereafter may be clothed with or given any power or authority to make, adopt, promulgate or enforce rules to submit the same to the attorney general for his approval as to legality. If the attorney general disapproves a rule, the agency may revise it and resubmit it to him for approval without commencing a new rulemaking procedure, subject to section 5.3 of this chapter. Failure of the attorney general to approve or disapprove the

---

**3.** IC 4–22–1–1 *et seq.*

**4.** IC 4–22–2–4 and IC 4–22–2–5.

rule within forty-five (45) days of submission or resubmission shall be deemed to constitute approval. After forty-five (45) days from the date the attorney general receives a proposed rule, the agency shall submit it to the governor for approval. The governor must approve or disapprove the proposed rule within fifteen (15) days from the date it is submitted to him by the originating agency, unless he notifies, in writing, the secretary of state that he requires additional time in which to consider the proposed rule. Upon notice to the secretary of state, the governor shall have no more than an additional fifteen (15) days in which to approve or disapprove the proposed rule. If the governor takes no action within the allowable number of days, the proposed rule will be deemed to have been approved as of the last allowable day. When approved or deemed to have been approved by the governor such agency shall file the original approved copy with the secretary of state who shall note the date and hour of such filing thereon and said agency shall also file two (2) duplicate approved copies with the legislative council. No such rule shall be effective until after compliance with the provisions of this chapter and until they have been so approved and filed and shall be effective as of thirty (30) days from the date and time filed with the secretary of state unless a later date is specified in the rule. Beginning January 1, 1979, all agencies and the attorney general's office shall use the format, numbering system, standards and techniques developed by, and the technology and equipment available at, the legislative council when drafting proposed rules. The attorney general is the legal advisor to all agencies to assist in the drafting and preparation of rules.

Any proposed rule that has not been approved by the governor within one (1) year after its initial publication in the Indiana Register, and any subsequent action on that proposed rule are void. (Formerly: Acts 1945, c. 120, s. 5). As amended by Acts 1977, P.L. 38, SEC. 4; Acts 1979, P.L. 24, SEC. 2; Acts 1981, P.L. 37, SEC. 1."

The Department has no statutory duty under the Act to seek prior court approval of proposed rules. Similarly, IC 16–16–1–9 does not impose a duty on the Department to submit proposed rules to a court for approval. Therefore, a court's mandate order, which may properly be used to order an agency to perform a clear statutory duty, is improper here.

In *Ind. Dept. of Public Welfare v. St. Joseph's Medical Center, Inc.* (1983), Ind. App., 455 N.E.2d 981, *transfer den.*, we held that the trial court erred in ordering the state agency to submit to it proposed rule revisions. We noted:

"I.D.P.W. must be allowed to independently bring eligibility standards into compliance without court interference in order to preserve the integrity of the executive branch of government. *See City of Portage v. Rogness* (1983), Ind. App., 450 N.E.2d 533. Only where the agency unlawfully withholds or unreasonably delays this redetermination may the judiciary compel executive action. [*ABC v. Johnson* (1973), 158 Ind.App. 467, 303 N.E.2d 64.]"

The same logic is applicable to initial rule making. Moreover, Southlake's argument that prior court approval of proposed rules will more likely result in compliance is premature without a showing the Department has failed to comply after having a reasonable time to do so.

The separation of powers among our three branches of government may not be violated by use of a mandate order which, in any case, is an extraordinary remedy viewed with disfavor. *Civil City of South Bend, supra.* The trial court's order requiring the Department to submit proposed rules to it prior to promulgation was beyond its mandate authority. Therefore we reverse paragraph 9 of the trial court's mandate order.

*Issue 3*

■ IC 16–16–1–9 requires the Department to "examine and approve submitted

budgets" of mental health centers. IC 16–16–1–10 [5] authorizes the Department to develop and promulgate rules necessary for the procedure to apportion state funds in the event the funds do not exceed the total operating deficits of all the mental health centers. The "operating deficit" is the difference between the total amount of the mental health center's budget and the total amount of money received from the county, gifts, fees and federal grants, i.e. the amount budgeted expenditures exceed revenues.

The Department has interpreted IC 16–16–1–9 to grant it authority to adjust submitted budget requests as part of its discretionary approval power. In addition, it defines "operating deficit" as the amount by which *approved* expenditures exceed *approved* revenues. At the time it receives submitted budgets, the Department is aware of the amount of state funds available for mental health centers for the following year. As a result, after the Department has approved budgets under its interpretation, there never has been a year when state funds were insufficient to pay all the mental health centers' operating deficits. Consequently, the Department asserts that rules under IC 16–16–1–10 have never been required.

Southlake alleged, and the trial court found, that the Department's practice results in *de facto* apportioning of limited state funds in violation of IC 16–16–1–10. The trial court ordered the Department, in determining the amount of proposed budgets to approve under IC 16–16–1–9, not to consider whether the proposed budgets exceed available state funds. If, after submitted budgets have been approved, the total amount of operating deficits for all mental health centers exceeds available state funds, then the trial court ordered the Department to promulgate rules under IC 16–16–1–10 to determine the necessary procedure for apportioning limited state funds.

The Department maintains that the trial court's order would force it to give "rubber stamp" approval to all submitted budgets (which allegedly would be highly inflated as a result), illegally infringing upon the Department's discretion to examine and approve budgets.

Under the mandatory language present in IC 16–16–1–9, the Department has a clear duty to:

1) promulgate rules and regulations for the submission of mental health center programs [6] and budgets;

2) examine and approve submitted budgets; and

3) allot the amount of operating deficit to each center after subtracting other sources of income.

The Department's duty to "examine and approve" the submitted budgets encompasses more than mere "rubber stamp" approval. The act of "approval" implies the use of discretion. *See, e.g., Brown v. Cranston* (1963), 29 Cal.Rptr. 725, 730, 214 Cal.App.2d 660. However, it does not imply authority to proceed a further step and rewrite disapproved portions. *Webster's* defines "examine" as "to inspect closely." *Black's Law Dictionary*, 4th Ed. defines "approve" as "To be satisfied with; to confirm, ratify, sanction, or consent to some act or thing done by another; . . . ." The

---

**5.** "16–16–1–10 State funds; apportionment

Sec. 10. In the event that sufficient state funds are not available in any given fiscal year to meet the operating deficit of each and every operating community mental health center, the Department of Mental Health is hereby authorized to develop policies of apportionment giving due recognition to the quality of programs, relative wealth, needs and other factors of the population served which the Commissioner of Mental Health shall deem appropriate and shall apportion such funds as are available in accord with these policies. The Commissioner of Mental Health shall make certain that each operating community mental health center establishes a schedule of patient fees and may establish rules and regulations pertaining to the use and allocation of patient fees in order to create incentives for a reasonable effort to collect fees. This may include some use of patient fees to expand or fund new programs and to retire capital indebtedness. (Formerly: Acts 1971, P.L. 226, SEC. 5)."

**6.** This decision does not address the scope of the Department's approval of mental health center programs apart from budgets.

Department is authorized to scrutinize the budget and either approve or disapprove the *submitted* budget.

The primary question for us in determining whether the trial court exceeded its mandate authority is: Does the state, through the Department of Mental Health, have under its duty to examine and approve submitted budgets in IC 16–16–1–9, the discretion to reduce budget requests based in part on the amount of available state funds? The answer must be no for two reasons.

First, the Department has a clear statutory duty to apportion state funds *only* under IC 16–16–1–10, which duty arises *after* it is determined state funds are insufficient to meet the centers' operating defi-

cits. Operating deficits cannot be determined until submitted budgets have been approved under IC 16–16–1–9. Thus, Department "approval power" under IC 16–16–1–9 cannot include discretion to adjust budgets based in part on available state funds, i.e. to have discretion under IC 16–16–1–9 to do what they are *required* to do under rules promulgated pursuant to IC 16–16–1–10.

Second, county commissioners have the discretion to decide whether to fund mental health centers. IC 16–16–1–2, –3, –4.[7] Once they decide to provide financial assistance, the county commission acquires a mandatory duty to fund the centers according to IC 16–16–1–6 and –7.[8] *See State ex*

---

**7.** "16–16–1–2 Financial assistance

Sec. 2. The board of county commissioners for a county may authorize the furnishing of financial assistance to any community mental health center or any community mental retardation and other developmental disabilities center located, or which may hereafter be located, in the county for the purpose of constructing and/or operating the center. The county council of the county, upon request of the board of county commissioners, may appropriate annually, from the general fund of the county, funds to provide financial assistance for construction and/or operation of the center in an amount of not to exceed the amount which could be collected from the annual levy up to a ten cent ($.10) tax on each one hundred dollars ($100) of taxable property within the county. (Formerly: Acts 1965, c. 48, s. 2; Acts 1975, P.L. 155, SEC. 2).

"16–16–1–3 Financial assistance; multiple-county services

Sec. 3. In cases where a mental health center or a mental retardation and other developmental disabilities center is organized to provide services to two (2) or more counties, the board of county commissioners of each county may authorize the furnishing of financial assistance for the purpose of constructing and/or operating the center, and the county council of each county, upon the request of the board of county commissioners of the county, may appropriate annually, from the general fund of the county, funds, to provide financial assistance for construction and/or operation of the center in an amount of not to exceed the amount which could be collected from the annual levy of a ten cent (10 cent) tax on each one hundred dollars ($100) of taxable property within the county. (Formerly: Acts 1965, c. 48, s. 3; Acts 1967, c. 149, s. 4; Acts 1975, P.L. 155, SEC. 3).

16–16–1–4 Financial assistance; out-of-state facilities

Sec. 4. In cases where the facilities for a community mental health center or a community mental retardation and other developmental disabilities center are located in another state adjacent to Indiana, and the center is organized to provide services to residents of Indiana, the board of county commissioners of each county whose residents may receive services from the center may authorize the furnishing of a share of financial assistance for the purpose of constructing and/or operating the center and the county council of each such county, upon the request of the board of county commissioners of the county, may appropriate annually, from the general fund of the county, funds to provide financial assistance for construction and/or operation of the center in an amount not to exceed the amount which could be collected from the annual levy of a ten cent (10 cent) tax on each one hundred dollars ($100) of taxable property within the county. (Formerly: Acts 1965, c. 48, s. 4; Acts 1967, c. 149, s. 2; Acts 1975, P.L. 155, SEC. 4)."

**8.** "16–16–1–6 Funding; amount

Sec. 6. A county shall fund Community Mental Health Centers, for operation, in an amount at least equivalent to that which would be raised by an annual tax rate of four cents (4 cents) on every hundred dollars ($100) of taxable property within the county, unless a lesser rate will be adequate to fulfill the county's financial obligations as set forth elsewhere, in the following situations:

(a) where the total population of the county is served by one such center, or

(b) where the total population of the county is served by more than one center, or

(c) where the partial population of the county is served by one center, or

(d) where the partial population of the county is served by more than one center.

*rel. Southern Hills v. Dubois County* (1983), Ind.App., 446 N.E.2d 996. The county's maximum appropriation is determined by a formula [9] linked to the center's operating budget. Consequently, because the county bears a significant share of the financial burden, it is given the power to review mental health center budgets prior to submission to the Department for approval. IC 16–16–1–9. This negates the Department's argument that, barring its power to reduce a submitted budget, the centers will submit highly inflated, unrealistic budgets which must then be automatically approved by the Department. The county, given significant funding responsibility, will serve as a check on excessive budgets.

In summary, the trial court exceeded its mandate authority in ordering the Depart-ment to include particular factors in its rules and in requiring court approval of the rules prior to their promulgation. The trial court had jurisdiction under its mandate authority to order the Department to accomplish a clear and imperative statutory duty. The Department has the following nondiscretionary duties under IC 16–16–1–9 and –10:

1) to promulgate rules and regulations for submission of mental health center programs and budgets;

2) to examine and approve submitted budgets as defined herein;

3) to allot the amount of operating deficits to each center after subtraction of other center income; and

4) to apportion state funds to mental health centers in any fiscal year that

In situations (a) and (c), above, the county's maximum appropriation for part of the total operating budget of the center shall be calculated upon the ratio that the total county population served by the center bears to the total population served by the center, such ratio to be expressed as a fraction and the amount of the maximum appropriation to be calculated by multiplying such fraction by the total operating budget of such center after it is reduced by the amount of anticipated gifts, except bequests and merchandise, fees, federal grants for direct service, except research and demonstration grants. "In situations (b) and (d), above, the county's maximum appropriation for part of the total 'operating budget' of the centers shall be calculated in the same manner as in situations (a) and (c) except that the figure derived from that calculation shall represent the combined maximum appropriation to all centers serving the particular county. To determine the allotment to each center serving the total population of the county under situation (b), the amount actually appropriated shall be apportioned according to the proportion of the population served by each center to the total population of the county. To determine the allotment to each center in situation (d), the amount actually appropriated shall be apportioned according to the proportion of the population served by each center to the population of the county served by all centers.

The maximum appropriation calculated by this section represents the county's absolute proportional share of the center or center's total operating budget. If that proportional share is less than the four cent (4 cent) requirement, above, the county shall be required and allowed to appropriate only the maximum appropriation amount. If the maximum appropriation is more than the four cent (4 cent) requirement above, the county shall be required to satisfy the four cent (4 cent) appropriation equivalent and may appropriate an amount in excess of the four cent (4 cent) equivalent appropriation up to an amount added to the four cent (4 cent) equivalent appropriation which would equal a ten cent (10 cent) equivalent appropriation, or an amount added to the four cent (4 cent) equivalent appropriation which would equal the maximum appropriation calculated by this section, whichever is less.

The requirements and calculations of this section and following sections shall have no bearing on or relationship with previous sections of this chapter insofar as those sections relate to the construction budget of any community mental health center. (Formerly: Acts 1971, P.L. 226, SEC. 1).

16–16–1–7 Funding; appropriation

Sec. 7. The county tax levying body shall appropriate and the county council must approve the funds necessary to carry out the provisions of this chapter. (Formerly: Acts 1971, P.L. 226, SEC. 2)."

9. "[T]he county's maximum appropriation for part of the total operating budget of the center shall be calculated upon the ratio that the total county population served by the center bears to the total population served by the center, such rates to be expressed as a fraction and the amount of the maximum appropriation to be calculated by multiplying such fraction by the total operating budget of such center after it is reduced by the amount of anticipated gifts, except bequests and merchandise, fees, federal grants for direct service except research and demonstration grants." IC 16–16–1–6.

state funds are unavailable to meet the total of all mental health centers' operating deficits only after promulgation of rules pursuant to IC 16–16–1–10.

The trial court's mandate order requiring the Department to approve submitted budgets under IC 16–16–1–9 without consideration of the amount of available state funds is affirmed.[10]

Affirmed in part and reversed in part.

STATON, P.J., and HOFFMAN, J., concur.

---

10. In its reply brief the Department attempts to raise a further issue concerning the trial court's order. Since this issue was not raised in appellant's principal brief or in its motion to correct errors, it has been waived. Appellate Rule 8.3(A)(7).